IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| SCOTT BLOMENKAMP, | ) | No. 78292-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF EDMONDS, a municipal | ) | |
| corporation; LEIF BJORBACK, | ) | |
| Edmonds City Building Official; | ) | UNPUBLISHED OPINION |
| KAUTZ ROUTE, LLC, | ) | |
| | ) | FILED: July 22, 2019 |
| Respondents. | ) | |

VERELLEN, J. — Scott Blomenkamp appeals from the superior court's order dismissing his Land Use Petition Act (LUPA)[1] petition for lack of standing. He also appeals the dismissal of his tort claims against Kautz Route LLC (Kautz) and the City of Edmonds (City). Because the superior court properly dismissed Blomenkamp's LUPA and tort claims, we affirm.

## FACTS

After unsuccessfully appealing the denial of his first LUPA appeal,[2] Blomenkamp filed this appeal of his unsuccessful second LUPA petition.

---

[1] Ch. 36.70C RCW.

[2] Blomenkamp v. City of Edmonds, No.75737-7-1-I, slip op. at 2-4 (Wash. Ct. App. July 24, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/757377.pdf.

In October 2013, Kautz began developing a five-duplex project in Edmonds, Washington. On February 5, 2014, the architectural design board (ADB) for the City reviewed and approved Kautz's project with conditions. No one appealed the ADB decision. On December 29, 2014, Kautz obtained a site and utility improvements permit that contemplated clearing. No one appealed that permit.[3]

In May 2015, while grading the site, Kautz severed tree roots extending into the development site from some trees located on adjoining property purchased by Blomenkamp on May 12, 2015.[4] In June 2015, Blomenkamp and two other residents filed a request for review of the ADB approval of Kautz's project pursuant to Edmonds Community Development Code (ECDC) 20.100.040.[5]

The City's Development Services Director (Director) concluded that the approved permits for Kautz's project "complie[d] with City code" and that the project was "operating within the conditions of the approved permits."[6] The City's Hearing Examiner (Examiner) rejected Blomenkamp's claims to revoke the permits and to award damages.[7]

---

[3] Id. at 2.

[4] CP at 162.

[5] CP at 151-52. As relief for these alleged violations, Blomenkamp sought revocation of the ADB approval and $50,000 in compensation for the damage caused to his trees. CP at 167.

[6] CP at 159.

[7] Blomenkamp, slip op. at 3-4. The examiner concluded: (1) "compliance with Chapter 18.45 ECDC was subject to the exclusive jurisdiction of the ADB during the design review process[,]" (2) "the ADB would have had a fairly accurate understanding of precisely how much grade and fill was involved in the project[,]" (3) "[r]evocation of the permit will not prevent any further tree damage or remedy the hazards that

2

In December 2015, Blomenkamp appealed the Examiner's decision to Snohomish County Superior Court under LUPA but the superior court dismissed the petition.[8] Blomenkamp appealed that order of dismissal to this court.[9] We rejected Blomenkamp's argument that the City failed to enforce the codes and ordinances governing the permits it issued Kautz in 2014 as a prohibited collateral attack.[10]

On April 26, 2017, while review of his first LUPA petition was still pending in this court, Blomenkamp filed a second LUPA petition and Complaint for Damages in Snohomish County Superior Court.[11]

In the LUPA portion of his second petition, Blomenkamp identified the land use decision being appealed as the City Building Official's April 6, 2017 issuance of certificates of occupancy to Kautz for the same five properties that were the subject of his first petition.[12] In the damages portion, he asserted numerous tort claims against Kautz, including timber trespass, damage to land, trespass,

---

currently exist[,]" and (4) if Blomenkamp "believes he is entitled to a cash award, he needs to file his claim in superior court, who with . . . tort jurisdiction is the proper forum to adjudicate damages claims." CP at 176-77.

[8] CP at 194, 281, 327; Blomenkamp, slip op. at 4.

[9] CP at 331.

[10] Blomenkamp, slip op. at 1-2. We also rejected all of Blomenkamp's remaining claims and his motion for reconsideration. Id. at 10-13; CP at 433. The Washington Supreme Court denied his petition for review. Blomenkamp v. City of Edmonds, 190 Wn.2d 1003, 413 P.3d 14 (2018).

[11] CP at 440.

[12] CP at 441, 458-62.

negligence, gross negligence, and nuisance.[13] He asserted a single claim of "Local Municiple [sic] Tortious Conduct" against the City.[14]

Based on a series of motions, the superior court dismissed Blomenkamp's second LUPA petition for lack of standing, dismissed all of his tort claims against Kautz, and dismissed his tortious conduct claim against the City.[15] Blomenkamp appeals.[16]

## ANALYSIS

### I. Second LUPA Petition

Blomenkamp contends the superior court erred in dismissing his second LUPA petition for lack of jurisdiction and standing.[17] Blomenkamp mistakenly refers to jurisdiction. The superior court dismissed the LUPA petition based only upon lack of standing.[18]

Additionally, although "jurisdiction" is often used imprecisely, a court has subject matter jurisdiction if it has authority to adjudicate the type of controversy involved in the action.[19] The "type of controversy" refers to the nature of the case

---

[13] CP at 451-54.

[14] CP at 454.

[15] CP at 640-42, 667-68, 2000-04.

[16] CP at 1992-94.

[17] Appellant's Br. at 3-4, 13-22.

[18] Report of Proceedings (RP) (July 12, 2017) at 36 (ruling "there is no standing.").

[19] In re Marriage of McDermott, 175 Wn. App. 467, 480-81, 307 P.3d 717 (2013) (quoting Shoop v. Kittitas County, 108 Wn. App. 388, 393, 30 P.3d 529 (2001)); see also Cole v. Harveyland, LLC, 163 Wn. App. 199, 209, 258 P.3d 70 ("The critical

or the relief sought.[20] A superior court has subject matter jurisdiction to hear a LUPA petition challenging a land use decision.[21]

"To have standing to file a land use petition, a petitioner must first 'exhaust [ ] his or her administrative remedies to the extent required by law.'"[22] We review LUPA standing de novo.[23]

In his first LUPA petition, Blomenkamp challenged the City's decisions to permit and approve Kautz's project on the theory the City failed to enforce its codes and ordinances. On appeal, we rejected his claim as an impermissible belated collateral attack.[24] Now, Blomenkamp contends that the City's issuance of certificates of occupancy to Kautz was "a final decision that it would not enforce its

---

concept in determining whether a court has subject matter jurisdiction is the type of controversy.").

[20] Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 316, 76 P.3d 1183 (2003); Magee v. Rite Aid, 167 Wn. App. 60, 73, 277 P.3d 1 (2012).

[21] Durland v. San Juan County, 182 Wn.2d 55, 64, 340 P.3d 191 (2014).

[22] Id. at 66 (quoting RCW 36.70C.060(2)(d)). LUPA petitions must be brought within 21 days of the land use decision. RCW 36.70C.040(3). Failure to timely pursue a right to appeal a land use decision precludes a collateral attack of that decision via a challenge to subsequent land use decision. Blomenkamp, slip op. at 6; Durland v. San Juan County, 174 Wn. App. 1, 13, 298 P.3d 757 (2012) ("[A] party may not collaterally challenge a land use decision for which the appeal period has passed via a challenge to a subsequent land use decision.").

[23] Knight v. City of Yelm, 173 Wn.2d 325, 336, 267 P.3d 973 (2011).

[24] There, we explained that a LUPA petition "does not allow a belated collateral attacked on a permit in the guise of a failure-to-enforce claim." Blomenkamp, slip op. at 9 (holding that Blomenkamp was precluded from raising substantive tree protection standards in his LUPA petition challenging the February 2014 ADB approval and December 2014 permit).

development regulations."[25] Critically, however, this is the same "failure-to-enforce" argument we rejected on review of his first appeal. For similar reasons, we conclude that Blomenkamp lacked standing to bring the collateral attacks contained in his second LUPA petition.[26]

Blomenkamp again cites Chumbley v. Snohomish County,[27] and now cites Biermann v. City of Spokane[28] to argue that a City's issuance of occupancy certificates supports standing under LUPA to challenge its final enforcement decisions.[29] His reliance on those cases is misplaced.

In Chumbley, the county's decision to issue a certificate of occupancy was not the key decision. There, the county's September 9, 2015 determination that "no permit will be required" was the final enforcement decision triggering commencement of the 21-day deadline to file a LUPA petition; the county's

---

[25] Appellant's Br. at 18; Appellant's Reply Br. at 14. He again claims that Kautz's project "did not have a clearing permit and the clearing and development has caused damage to his trees in violation of ECDC." Appellant's Br. at 20. The City's "lack of enforcement" is at the core of his second LUPA petition. Appellant's Reply Br. at 1.

[26] Blomenkamp, at slip op. 8-9; Stientjes Family Tr. v. Thurston County, 152 Wn. App. 616, 624 n.8, 217 P.3d 379 (2009) (challenges brought "after LUPA's 21-day time period for filing an appeal constitute impermissible collateral attacks"); Habit Watch v. Skagit County, 155 Wn.2d 397, 407, 120 P.3d 56 (2005) (even illegal land use decisions will be allowed to stand if not timely challenged under LUPA).

[27] 197 Wn. App. 346, 386 P.3d 306 (2016). Blomenkamp unavailingly cited Chumbley on his first appeal to this court. See Blomenkamp, slip op. at 9 n.23.

[28] 90 Wn. App. 816, 960 P.2d 434 (1998).

[29] Appellant's Br. at 17-19; Appellant's Reply Br. at 2.

September 22, 2015 issuance of the certificates of occupancy was not.[30] We reversed in Chumbley because the petitioners timely filed their LUPA petition on September 30, 2015 (within the 21-day deadline).[31] Here, the City made its final land use decisions on the scope of permits issued to Kautz in February and December 2014, but Blomenkamp did not begin to challenge those permits until June 2015. The City's issuance of the April 6, 2017 certificates of occupancy was not a final enforcement decision.

Biermann is also factually distinguishable. In Biermann, a divided Division III panel concluded that an adjacent property owner had standing under LUPA to challenge the City of Spokane's approval of a "certificate of compliance" for a non-conforming garage.[32] Biermann did not involve "certificates of occupancy." Most significantly, the focus of Biermann was on whether inspections extended the duration of a building permit, and there is no indication the property owner's LUPA petition was an untimely collateral attack.[33]

In short, Blomenkamp cannot, under the guise of a LUPA failure-to-enforce challenge, use a certificate of occupancy issued at the end of a project to

---

[30] Chumbley, 197 Wn. App. at 358-59, 365.

[31] Id. at 365.

[32] Biermann, 90 Wn. App. at 818-20 (There, the developers' building permit expired before they began construction, they constructed a two-story garage when only a one-story had been approved, and Spokane "issued three stop-work orders and threatened the [developers] with criminal action." Despite this, Spokane's hearing examiner granted the developer's request for a certificate of compliance.).

[33] Id. at 819.

collaterally attack a final land use decision made near the beginning of the project. The superior court did not err in dismissing Blomenkamp's second LUPA petition for lack of standing.[34]

## II. Tort Claims

Blomenkamp also contends the trial court erred in dismissing his tort claims against Kautz and the City.[35]

Our case law "recognizes[ ] claims for damages based on a LUPA claim must be dismissed if the LUPA claim fails."[36] In Mercer Island, the court explained that because all of the petitioner's claims challenged the validity of the land use decision at issue "and were therefore subject to LUPA, the [petitioner's] failure to assert them within LUPA's time limitations requires dismissal of all the claims, including those for damages. Thus, the trial court did not err by dismissing the

---

[34] See Durland, 175 Wn. App. at 325 (noting that even granting the petitioner's requested relief from the administrative exhaustion requirement in establishing LUPA standing, such relief "could not, however, expand the authority of the court to act"). Given our conclusion, we do not need to address the parties' arguments on whether the City's issuance of occupancy certificates qualifies as a final land use decision.

[35] Appellant's Br. at 4-7, 29-35.

[36] Mercer Island Citizens for Fair Process v. Tent City 4, 156 Wn. App. 393, 405, 232 P.3d 1163 (2010) (citing Shaw v. City of Des Moines, 109 Wn. App. 896, 901-02, 37 P.3d 1255 (2002) "(where LUPA petition challenging conditions imposed on building permit application included a claim for damages, court acknowledged: 'If the petitioner loses the LUPA appeal, the damages case is moot and the matter is over.')"; Asche v. Bloomquist, 132 Wn. App. 784, 800, 133 P.3d 475 (2006) "(LUPA precluded nuisance claim for damages because it depended entirely upon a finding that the challenged permit was invalid).").

claims."[37] Blomenkamp even acknowledges "LUPA is controlling . . .when the damages are derived directly from the decision being reviewed under LUPA."[38]

A decision how ordinances or regulations should be enforced is a "determination" that qualifies as a land use decision subject to LUPA and does not constitute a separate tortious act committed during the land use process.[39]

Here, the record reveals from the initiation of his first LUPA petition until now, Blomenkamp's tort claims are based on the City's "determination" of how its codes and ordinances should be enforced as to Kautz's project. Beginning with the August 2015 hearing before the Examiner where he requested revocation of Kautz's permits and $50,000 in damages to his trees, Blomenkamp argued that Kautz "should have followed the tree-cutting code. . . . The code needs to be enforced. This is not a land use issue, but it is a code enforcement issue."[40]

Then, in his motion for reconsideration following this court's decision on his first appeal, Blomenkamp argued (among other things) that his LUPA petition was not an impermissible collateral attack on a permit, but "an appeal of an enforcement action."[41] Blomenkamp also incorporated "all of the facts" set forth in

---

[37] Id. at 405.

[38] Appellant's Reply Br. at 20.

[39] See Maytown Sand & Gravel, LLC v. Thurston County, 191 Wn.2d 392, 426-28, 423 P.3d 223 (2018) (distinguishing tort claims from a "determination" subject to LUPA).

[40] CP at 171 (emphasis added).

[41] CP at 386.

his second LUPA petition as the factual support that he contends entitles him to monetary damages for his tort claims.[42]

Moreover, his current briefing continues to allege the City's failure to enforce, and Kautz's failure to comply with, clearing codes and ordinances. For instance, he claims that Kautz violated ECDC 18.45 and cleared "outside a permitted area" and caused damage to his tree, his nuisance claim is "partially based on the lack of a dense visual barrier that [Kautz is] required to have with the required type 1 landscape," and the "City was negligent in its permitting the development without the required Type 1 landscaping and failed to enforce such requirements."[43]

The record makes clear that Blomenkamp's tort claim against the City is based on the City's determination on how to enforce its ordinances—land use decisions the City finalized in 2014. Because Blomenkamp's second LUPA petition inherently focused on his failure to enforce theory, his tort claim against the City based on that same theory necessarily fails because he lacks standing to pursue his second LUPA petition. The superior court properly dismissed Blomenkamp's tort claim against the City.[44]

---

[42] CP at 452.

[43] Appellant's Br. at 31, 34, 37.

[44] Blomenkamp relies on Post v. City of Tacoma, 167 Wn.2d 300, 217 P.3d 1179 (2009) for the proposition that if money damages or compensation is the relief requested from a land use decision, then such a claim is not subject to LUPA's procedures and deadlines pursuant to RCW 36.70C.030(1)(c). See Appellant's Reply Br. at 19. Post is distinguishable. First, unlike the case at bar, the Post court concluded that the City of Tacoma's enforcement of ordinance violations was not a

As to his tort claims against Kautz, the alleged torts are grounded in the premise that when grading, Kautz crossed over the property line damaging tree roots on Blomenkamp's side of the property line.[45]

We review a summary judgment order de novo and engage in the same inquiry as the trial court.[46] Summary judgment is proper if there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law.[47] A party opposing summary judgment may not rely solely on allegations made in its pleadings but "'must set forth specific facts showing that there is a genuine issue for trial.'"[48] We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[49] We may affirm the superior court's summary judgment decision on any ground supported by the record.[50]

---

"land use decision" subject to LUPA under RCW 36.70C.020(1)(c). Id. at 308-12. Second, the Post court did not address the merits of the plaintiff's damages claims because "[t]hose claims were either dismissed by the trial court or abandoned by Post prior to appeal." Id. at 307 n.2.

[45] Appellant's Br. at 29-33.

[46] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

[47] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013). A material fact is one that affects the outcome of the litigation. Janaszak v. State, 173 Wn. App. 703, 711, 297 P.3d 273 (2013).

[48] Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting CR 56(e)).

[49] Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[50] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

In his opposition to Kautz's motion for summary judgment on the various trespass claims, Blomenkamp did not present any proper declarations or affidavits establishing a genuine issue of material fact that the damage to the tree roots occurred on Blomenkamp's side of the property line.[51] A property owner may cut back to the property line any tree roots that intrude onto his or her property.[52] Blomenkamp did not establish on summary judgment that Kautz owed him any legal duties supporting his negligence and nuisance claims.[53] Nor has he cited to any authority stating that Kautz owed such duties or even discussing the elements required for his various tort theories.[54] Accordingly, Blomenkamp fails to establish a genuine issue of material fact precluding summary judgment rejecting his tort claims against Kautz.

We affirm.

WE CONCUR:

---

[51] CP at 1032, 1055.

[52] Gostina v. Ryland, 116 Wash. 228, 233, 199 P. 298 (1921); Boyle v. Leech, 7 Wn. App. 2d 535, 436 P.3d 393 (2019).

[53] CP at 1054-55.

[54] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (appellate courts do not consider arguments that are not supported by authority).